# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## RANDY FLIPPO v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court of Moore County
### No. 1099      Robert G. Crigler, Judge

### No. M2010-02325-CCA-R3-PC - Filed January 6, 2012

Randy Flippo ("the Petitioner") filed for post-conviction relief, alleging (1) that he was denied effective assistance of counsel in conjunction with his guilty plea to theft of property between five hundred and one thousand dollars; and (2) that his plea was not voluntarily made. After an evidentiary hearing, the post-conviction court denied relief, and the Petitioner has appealed solely as to the ineffective assistance of counsel claim. After a thorough review of the record, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

David L. Stewart, Winchester, Tennessee, for the appellant, Randy Flippo.

Robert E. Cooper, Jr., Attorney General & Reporter; Clark B. Thornton, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; Hollynn Eubanks, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Guilty Plea*

The Petitioner was indicted on two counts of Class D felony theft of property over one thousand dollars. On March 20, 2009, the Petitioner pleaded guilty to one count of Class E felony theft of property between five hundred and one thousand dollars. At the start of the

plea hearing,[1] the trial court confirmed with the Petitioner, who had hearing difficulties, that he was able to hear the proceedings. The Petitioner wore a hearing device during the plea acceptance hearing, and the trial court asked the Petitioner to speak up if he was unable to hear at any point during the proceedings. The State then recited the factual basis for the charges, stating that on December 6, 2008, Glen Flippo reported that some walnut trees on his property that he shared with his brother, Fred Flippo, had been cut down. Glen Flippo is the Petitioner's uncle, and Fred Flippo is the Petitioner's father. After finding the trees cut down, Glen Flippo placed a chain and lock on a gate that provided access to the land. However, the next day he found that someone had returned to the property and removed the trees from the land. After investigation by Investigator Mike Rainey of the Moore County Sheriff's Department, the Petitioner became a suspect in the case.

When Investigator Rainey met with the Petitioner, the Petitioner was advised of and waived his Miranda rights. The Petitioner then admitted that he had taken the logs. Although the Petitioner had asked for permission for a year, he told Investigator Rainey that he had never been given an answer. He told Investigator Rainey that he decided to cut down the trees in the absence of permission from his father or uncle. The Petitioner explained to Investigator Rainey that he entered the property and took the trees without permission because he needed money.

The State also stated in its factual basis for the charges that the logs had not been properly cut, which reduced their value. The State asserted that, had the logs been cut properly, the trees would have been worth $1500. However, the Petitioner only received $843 from the sale of the logs, which had already been paid to the victims at the time of the plea. The Petitioner's counsel at the plea hearing ("trial counsel"), after conferring with the Petitioner, indicated to the trial court that the Petitioner did not agree that the logs were valued at more than a thousand dollars.[2] The Petitioner told the trial court that he agreed to everything else in the recitation except for the value of the logs. He also agreed that the value of the logs was five hundred dollars or greater and that he was, in fact, guilty of the theft. Under the terms of the plea bargain, the Petitioner agreed to a six-year sentence as a career offender.

[1] A transcript of the plea hearing was admitted as an exhibit at the post-conviction hearing.

[2] Although the State mentioned in its factual basis for the charges that the value of the timber was over a thousand dollars, the plea agreement was to theft of property between five hundred and one thousand dollars. The State noted that the actual value of the timber was not the reason that it was willing to lessen the charge.

-2-

The Petitioner indicated that he did not have any difficulty communicating with trial counsel about the case. He also acknowledged that there was nothing that trial counsel could have done to research or investigate that he had not done already.

After the trial court determined that the Petitioner had made his decision to plead guilty "freely and voluntarily," it accepted the plea and sentenced the Petitioner to six years in accordance with the plea agreement. The Petitioner then filed his petition for post-conviction relief, claiming that he was denied effective assistance of counsel and that his plea was not voluntary.

*Proof at Post-Conviction Hearing*

We will limit our review of the facts to those facts relevant to the Petitioner's claim on appeal. At the post-conviction hearing, trial counsel indicated that he did not have any direct discussions with the Petitioner until after his indictment. A different attorney represented the Petitioner in general sessions court. Trial counsel testified that he had approximately two or three discussions with the Petitioner and that those discussions likely took place in the courtroom. Trial counsel stated that, on one occasion, the Petitioner and trial counsel may have had their discussion in the back room of the courtroom. He could not remember whether he spoke with the Petitioner while the Petitioner was in jail.

Trial counsel recalled that the Petitioner was hard of hearing. Although he was able to communicate with the Petitioner, trial counsel said, "You had to almost yell at him for him to understand." Trial counsel did not think that the Petitioner had a hearing device with him during their conversations. He stated that, at the plea acceptance hearing, trial counsel asked the court to speak loudly, and he remembered that other accommodations were made to facilitate the Petitioner's ability to hear. Trial counsel acknowledged that the Petitioner was given a hearing device at the hearing and that the Petitioner indicated that he could hear the trial court.

Trial counsel testified that, in preparation for the Petitioner's case, he discussed the case at length with the Petitioner's previous counsel, he reviewed the preliminary hearing transcript, he spoke with the Petitioner, he researched the proper way to cut down trees, and he received general discovery information from the State. In his discussion with the Petitioner, the Petitioner told trial counsel that he had asked permission to cut down the trees in the past and was denied permission. Trial counsel said that, according to the Petitioner, at the time he cut down the trees, he did so without asking permission.

Trial counsel acknowledged receiving the State's proposed witness list which included Glen and Fred Flippo as potential witnesses, but he testified that he did not interview Glen

or Fred Flippo. Trial counsel stated that he believed that Glen and Fred Flippo were co-owners of the property on which the trees were cut. The Petitioner's counsel asked, "[W]ould you agree that as co-owners of the property, either one of them could have given permission for the trees to have been cut?" to which trial counsel agreed. However, trial counsel testified that he had not been told that either co-owner had given permission. In fact, trial counsel testified that he had reviewed the preliminary hearing transcript, in which Glen Flippo stated that neither he nor Fred Flippo had given the Petitioner permission to cut down the trees. Trial counsel indicated that his reasoning for not interviewing Glen or Fred Flippo stemmed from his discussions with the Petitioner, the sworn testimony of Glen Flippo at the preliminary hearing, and trial counsel's discussions with Investigator Rainey and the Petitioner's previous counsel.

Trial counsel's advice to the Petitioner when the State offered a plea bargain of twelve years was to reject the offer because the sentence offered was the maximum sentence he could receive at trial. However, once trial counsel negotiated with the State and the State agreed to a plea bargain of six years, he advised the Petitioner to accept the offer.

Trial counsel testified that, had he been made aware that one of the property owners had given the Petitioner permission to cut down the trees, it would have changed his advice regarding whether the Petitioner should accept the plea. He clarified, however, that he would need to be sure that the witness's statements were truthful and that the witness would give consistent testimony at trial.

The Petitioner's counsel asked trial counsel about his investigation regarding the price of the timber. Trial counsel responded that he spoke at length with Investigator Rainey, who apparently knew the proper method of cutting trees. Trial counsel also said that he conducted research via the internet to learn about the variations in value of the timber depending on the way it is cut.

Fred Flippo acknowledged at the post-conviction hearing that he was aware of the allegations and proceedings against his son, the Petitioner, for cutting down trees on his property. However, he testified that he had given the Petitioner general permission to cut trees off the land "some time before" and that he had never revoked that permission. Fred Flippo stated that he was present when the investigator spoke with his brother, Glen Flippo, but that he was never interviewed by anyone. When the State asked why he waited until the post-conviction hearing to come forward, Fred Flippo stated, "None of this even occurred to me when all of this was happening. It was kind of, hurts a bit, you know, when something like that happens. When your son is arrested in front of you like that, you don't think of all that stuff." Fred Flippo clarified that it hurt him to see the Petitioner being arrested.

The post-conviction court asked Fred Flippo if he thought it would be important to tell the police that he had given the Petitioner permission. Fred Flippo agreed that it would be important but that "[i]t never occurred to [him] at that time."

Moore County Sheriff Mark Logan recognized the Petitioner from seeing him in jail and in court and remembered obtaining a hearing piece for the Petitioner in his plea proceeding. The State asked Sheriff Logan if he was aware of the Petitioner's hearing problems prior to the hearing. Sheriff Logan responded, "I was not aware until he come [sic] to court on this matter and said he had to have some type of hearing device[], but I was not aware of that." He acknowledged that the Petitioner did not use a hearing device while in jail and that sign language was not necessary to communicate with him. Sheriff Logan also agreed that the Petitioner "suffers greater hearing loss in the courtroom than he does in the jail or out in the community[.]" He stated that the hearing device obtained for the Petitioner came from Wal-Mart and that the device had been misplaced since the hearing. Sheriff Logan also indicated that the Petitioner was wearing an "almost identical" device at the post-conviction hearing.

The post-conviction court denied relief, stating that the Petitioner failed to prove that trial counsel's representation was deficient and that the Petitioner's plea was "voluntarily, intelligently and understandingly made."

Although the post-conviction court noted that it was unnecessary to make a finding as to Fred Flippo's credibility at the post-conviction hearing, the post-conviction court, nevertheless, found that:

> I have to agree with the State, it is just beyond the pale of reason that you could see your son arrested, and if you had given permission to take the thing that was at issue that you would just stand there mute and not say anything about it. It is just not reasonable to believe that.

Regarding trial counsel's decision not to interview Fred Flippo, the post-conviction court stated: "I suppose it would have been better to interview the [Petitioner's] father, but based on the information [trial counsel] had, most importantly, his own client's testimony and the preliminary hearing tape, that it was reasonable for him to assume that there was a factual basis for the plea." The post-conviction court noted that the failure to interview a witness is not per se ineffective assistance of counsel and that the present case was one such case in which the failure to interview Fred Flippo did not equate to a deficiency on trial counsel's part. The post-conviction court also indicated that the record was silent as to indicating prejudice because the Petitioner did not take the stand.

The Petitioner timely appealed, arguing that he was denied effective assistance of counsel in the plea process because trial counsel failed to interview Fred Flippo and that such a failure to interview was prejudicial to the Petitioner.

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel and challenges to the validity of a guilty plea, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Jaco v. State, 120 S.W.3d 828, 830-31 (Tenn. 2003); Sexton, 151 S.W.3d at 531.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[3] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

---

[3] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

In the present case, the Petitioner argues that trial counsel's representation was deficient because he failed to interview Fred Flippo and that, had trial counsel interviewed Fred Flippo, he would not have advised the Petitioner to accept the plea.

Turning to the deficiency prong, the Petitioner points to his hearing problem and the manner and place of trial counsel's discussions with the Petitioner to argue that trial counsel's deficient interviewing of the Petitioner contributed to his decision not to interview Fred Flippo. Further, the Petitioner asserts that, "[h]ad trial counsel conducted his interviews with the [Petitioner] in a proper manner, perhaps he could have avoided the misunderstanding as to whether or not the [Petitioner] had permission to cut the timber in question." However, trial counsel did not appear to have any misunderstanding as to what the Petitioner told him. Furthermore, to the extent the Petitioner asserts that there might be a misunderstanding, the Petitioner did not testify at the post-conviction hearing concerning such a misunderstanding. Thus, the Petitioner has failed to provide clear and convincing evidence that there was a misunderstanding between the Petitioner and trial counsel. See Tenn. Code Ann. § 40-30-110 (a) (2006) ("The petitioner shall appear and give testimony at the evidentiary hearing if the petition raises substantial questions of fact as to facts in which the Petitioner participated . . . ."); see also Cauthern v. State, 145 S.W.3d 571, 607 (Tenn. Crim. App. 2004).

Trial counsel stated that, prior to advising the Petitioner to accept the plea bargain, he discussed the case with the Petitioner and the Petitioner's previous counsel, reviewed the preliminary hearing transcript and general discovery, and conducted research. Although trial counsel admitted that he did not interview Fred Flippo, he indicated that he did not interview Fred Flippo based upon his discussions with the Petitioner, the sworn testimony of Glen Flippo from the preliminary hearing, and his discussions with the Petitioner's previous counsel and Investigator Rainey.

The post-conviction court found that "it was reasonable for [trial counsel] to assume that there was a factual basis for the plea." Although the Petitioner has shown that trial counsel did not interview Fred Flippo, he has not carried his burden to show that such a

decision was deficient. Based on what trial counsel knew when he advised the Petitioner to accept the plea, there was no reason for trial counsel to believe that Fred Flippo would testify that he had given the Petitioner permission when the Petitioner himself said that he cut down the trees without permission. See Howell, 185 S.W.3d at 326 (holding that reviewing courts should evaluate the case by looking through the perspective that counsel had at that time to determine the reasonableness of counsel's actions). Furthermore, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions." Strickland, 466 U.S. at 691. Here, the Petitioner told trial counsel that he did not have permission when he cut down the trees. Additionally, trial counsel knew that the Petitioner had told Investigator Rainey that he did not have permission. Based on the Petitioner's statements as well as Glen Flippo's sworn testimony, it was reasonable for trial counsel to believe that neither owner of the property had given the Petitioner permission to cut down the trees. Therefore, the Petitioner has failed to prove that trial counsel performed deficiently by not interviewing Fred Flippo.

As to the second prong, the Petitioner asserts that he suffered prejudice because trial counsel testified that, had Fred Flippo given the Petitioner permission to cut the trees, trial counsel would not have advised the Petitioner to accept the plea. However, the standard for an ineffective assistance claim in the context of a guilty plea requires a showing of "a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." Calvert, 342 S.W.3d at 486. As the trial court pointed out, the Petitioner did not testify at his post-conviction hearing. Moreover, the Petitioner also failed to allege in his petition that, had trial counsel interviewed Fred Flippo before the plea, he would not have pleaded guilty and instead would have insisted upon going to trial. Because the record is silent as to what the Petitioner would have done had trial counsel chosen to interview Fred Flippo, the Petitioner has failed to prove the second prong of his ineffective assistance of counsel claim. See Steven Mason v. State, No. 01C01-9610-CC-00428, 1997 WL 602912, at *1 (Tenn. Crim. App. Sept. 30, 1997) (holding that, because "the appellant did not testify, nor allege in his petition, that had he been so advised, he would not have pled guilty and would have insisted on going to trial[,] [t]he appellant failed to demonstrate how any defect in his counsel's advice caused him prejudice in the proceedings").

Moreover, the Petitioner presented Fred Flippo as a witness at the post-conviction hearing as required when asserting ineffective assistance for failure to call a witness. See Pylant, 263 S.W.3d at 869. However, the post-conviction court must determine whether that witness is credible. Id. at 869-870. Here, the trial court did not find Fred Flippo's testimony to be credible, stating that "it is just beyond the pale of reason that you could see your son arrested, and if you had given permission to take the thing that was at issue that you would just stand there and not say anything about it. It is just not reasonable to believe that."

Having failed to establish that trial counsel's performance was deficient or that trial counsel's actions were prejudicial to the Petitioner, the Petitioner is not entitled to post-conviction relief.

## **Conclusion**

For the foregoing reasons, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE